Next case will be People v. Peery, Scott, No. 5-160255. This is a case of People v. Peery, Scott, No. 5-160255.  We acknowledge the legality of such a sentence and therefore we are obliged to eliminate that argument. Next, I would address our argument that the court erred when it found that Mr. Peery violated the statute associated with failure to reduce speed to avoid an accident. 625 ILCS 511601 states that notwithstanding of the provisions of the code or the provisions of any local ordinance, every driver of the vehicle shall exercise due care to avoid colliding with any pedestrian or any person operating a bicycle or other device powered by human power, and shall give a warning by sounding a horn when necessary, and shall exercise proper precaution from observing any child or obviously confused, incapacitated, or intoxicated person. The Illinois Supreme Court subsequently established the elements necessary to prove beyond a reasonable doubt that an individual violated that statute. The court addressed this issue in N. Ray Vitale 71, I.L. 229-238-375, N.E. 8791, back in 1978. In that case, the court stated that the statute imposed a duty upon all motorists to exercise ordinary care, to reduce speed, and to avoid colliding with any person. In order for the state to prove their charge of failing to reduce speed, the state had to prove two issues. First, that the defendant drove carelessly, and that second, the defendant actually failed to reduce speed to avoid an accident. Now, at issue in this case, we believe that the state failed to reach its burden of proving beyond a reasonable doubt that our client drove carelessly. And in support of that contention, we would point to evidence and testimony adduced at trial. Specifically, things like the fact that during the direct examination of Detective Krug, the detective responsible for creating the accident reconstruction report, he testified that there was a telephone pole at the intersection of the two roads which may have shielded the deceased from Mr. Perry's view as he approached the intersection. We would point to testimony unrefuted that Mr. Perry approached the intersection, looked left, looked right, looked back to the left, following the rules of the road, and proceeded to make his right-hand turn onto Highway 159. Now, the state has raised the issue, and the accident's report states that at the time he was making this turn around the gradual curve that he was traveling at 17 to 21 miles per hour. A witness report from another motorist at the intersection, Elise Daniels, states that she was sitting at the intersection at a red light and observed Mr. Perry making his turn on a green light. He had the green light when he was making a turn. She further states that she did not see the deceased at the intersection. Evidence adduced at trial indicates that the deceased was a very slight built woman. She was 5'8". She weighed 80 pounds. She was wearing light blue clothing, maybe a darker blue blouse. The evidence states Detective Krug testified that according to his analysis the defendant was not speeding at the time of the accident. That he was not traveling too fast for conditions that day. That he was not driving recklessly or anything of that nature. The state pointed to no evidence which would indicate that Mr. Perry was driving carelessly at that time. Your Honors. What about the evidence that indicated that she was struck while still off the shoulder, on the shoulder essentially? Your Honor, there is conflicting evidence introduced at trial. But wouldn't that conflicting evidence be a matter of court determination? It would, Your Honor, but in this case both pieces of evidence show that the defendant was in the road, not on the shoulder. She was somewhere between the two reports, between a foot to as much as three feet out into the road in this curve. The accident recreation report indicated that she was moving. We have no way of knowing what the deceased was actually doing at the moment just prior to being hit by Mr. Perry. We acknowledge that her being hit was a tragedy. What the state has failed to do though, Your Honor, is prove, provide any single shred of evidence that Mr. Perry was doing anything other than what he was required to do in such a circumstance. The state's basic assertion is that because an accident occurred, he obviously must have failed to reduce speed to avoid it. That aspect of the case may be true in that there is no indication that Mr. Perry hit his brakes prior to hitting the deceased. However, it doesn't lean to anything towards the charge that he, or towards proving the necessary element that he drove carelessly. The state has seized upon the fact that during his testimony at trial, Mr. Perry stated that as he approached the intersection, he looked left, he looked right, he looked back to the left, and as he was making the turn, he was looking back to the right, and have asserted that somehow that statement meant that Mr. Perry was unable to see a pedestrian who at that point in the curve would have appeared directly in front of his truck. Thank you, counsel. You'll have an opportunity to engage with a better audience. Thank you. Ms. Shanahan, I'd like you to focus at the outset on the letters. The letters? You mean the judge? The thought thing. Excuse me? The thought. Yes. Yes. Yes, exactly. Okay. And we'd be glad to. Initially, I would note that this issue was not raised at trial, not objected to, and not even, plain error wasn't even raised in the brief, and there was no reply brief. So, pursuant to People v. Polk, which cites to the Illinois Supreme Court's decision in People v. Hilliard, a defendant who fails to argue for plain error of review obviously cannot meet his burden of persuasion. So I start off with the fact that this is forfeited. This is absolutely, completely forfeited. It wasn't raised at trial. It wasn't raised in the post-trial motion, and it wasn't, and plain error was not argued. What was the legal propriety of these letters? Was it any sentencing issue? This defendant has been convicted of the same crime three times. The same crime? Yes. Two times. What does that mean? That's exactly what it means. Please tell me. According to my notes here, on June 12, 2014, an owner of conviction was entered, and the defendant tried no contest and received a $1,000 fine. Then he filed a motion to vacate the conviction, and that motion was granted, and an amended ticket was issued. And the defendant pled guilty again on June 30, 2014, and he again received a $1,000. Even though you say he's been convicted, there's only been one factual determination. Twice he pled, but one factual determination. Yes. But nonetheless, a sentence was entered twice before this sentence was entered. But as far as the court's credibility of determination, that's only happened once. Well, yes, but I'm addressing Justice Chapman's question about this letter. If you look at this letter, in the record, it's Exhibit A, the one with the thump. It's quite clear that it's a victim impact statement, which probably the trial court considered in one of the previous convictions. Now, the defendant says that this letter was received three days before the judge entered his order, and I disagree with that. The order in this case, well, this is a copy of the letter. This is my handwriting, not anything official, but I wrote down that it was scanned on March 4, 2014. Here is the order, and I know for a fact, it's obvious in this order, that the order was entered on March 7, 2016. Now, the defendant says both of these documents were in March of 2015. This one, I know, was not. I know. What is the import of that? Well, the defendant is arguing that this letter comes in about thumps, and three days later, the judge enters an order saying thumps. Well, where else could it have come from? Well, if it came in two years earlier in a victim impact statement, which the trial court would be required to consider. But as a finding? As a finding. Well, it's entered in the order as if that was a finding as to how the accident happened. Well, he used the word thump, but if you look at the, I mean, if you read two years ago, a victim impact statement, where the victim's sister said his languages, her languages. He said he heard a thump. He claims he heard only two thumps. He heard more than two thumps than that, and he saw more than that. That's the thump. It is the State's position that this was a victim impact statement that was probably written two years before this. Regardless, was there any, is there any evidence that the defendant made any statement about hearing any exclamation or noise at all? Yes. Okay, and can you direct that to me? Both the defendant and the eyewitness, Alyssa Daniel, heard the defendant's truck strike. It was Hellcamp, the victim in this case. And she, I mean, they said, they heard about him. What did he say he heard? I'm not sure I have his exact statement, but I can. Okay. These are my notes, but I do have this in quotes. My last look was to the left, and I heard a noise as I was turning my head from the left to the right. Okay. And then. A noise, so that could be anything, correct? Well, I suppose so, but he didn't hit anything else. No, I understand. And then the, the stipulated testimony from Alyssa Daniel also said she heard a noise. So whether you call that statement a noise, a thump, a bump, a whatever, to say, to say it's, there was a noise when he hit her. You can call it what you want to say that because he used the word thump, it means that he was, that this was an ex parte conviction. First of all, if it's a victim impact statement, it's not an ex parte communication. It is something that a trial court is required to admit and consider. As I said, he was. But not as something the defendant said when it's made a total hearsay. Well, he's not using it as a quote. He used the word thump, which is a pretty distinctive word, I think. You could hear a noise could be a firecracker go off. It is undisputed that the defendant ran over the victim twice. I mean, front wheels and then again back wheels. That's not a question. Whether you define that noise as just a noise or a thump, I think thumps are pretty common. I don't see this as a defining, this could have just been in his head from knowledge. I mean, you run over somebody two times, it makes a noise.  But he didn't admit that he knew she ran over her. Oh, yeah, he did. At the time he ran over her? No. Oh, you mean when he turned? Yes. He didn't see her. Right. No, he didn't see her. But he heard the noise caused by him running over her first with the front wheels and then again with the back wheels. But he was totally unaware that he had hit somebody until at that point, correct? Because he wasn't looking to the right where she was. Okay. I mean, he did say in that part that I just read to you from his testimony, and that's quoted in our brief, that his last look was not to the right, it was to the left. And I think defense counsel's kind of got this a little bit. He said he looked to the right, he looked to the left. And by the way, I want to, just in case I don't get to this, it was a red light. Now, it's okay to turn right on a red light if you look to make sure everything's clear. So I think that's something that I disagree with factually, that this guy was turning right on the red light. I also believe the facts show that he looked to the right. There were no obstacles. And then again, I disagree with the defendant's citation of the facts. The expert said there were treason in a poll, but they were not in the way of the defendant's view. And then, so he said he looked to the right. He's got a clear view, so the expert says. He looks to the left. He starts his turn to the right. He's going. His last look, by his own testimony, is to the left. So he's looking to the left when he's driving to the right? He said his last, there is a direct quote in our brief that says, my last look was to the left. But you would necessarily have to be looking, presumably, to the direction you were driving. Not according to what he said. He said his last look was to the left. Now, he says he was starting to turn his right, but he says his last look was to the left. So you look to the right. You look to the left. And I would assume he kind of started turning his head with his hands, but by the time he's actually looking where the victim was, he's already hit her. All right. Are there any questions?  Thank you, counsel. Thank you, buttock. When I was in reverse order first, the defendant testified that on cross-examination, he stated that his eyes were at the steering wheel, turning back to the right, and his vehicle was in motion when the collision occurred. That's at C-56. Second, in accordance with the assertion that Judge Simmons was not using the word thumps as a quote, I would point to the fact that in his order, those words were in quotation marks as a direct quote. Third, the state's assertion that these letters were victim impact statements has no basis in the record. There has been no information produced to the court that any prior proceeding, there was a sentencing procedure whereby these letters were admitted into evidence, and even if they were not admitted into evidence but produced for the court, but even if they were, they would not be appropriate for the judge to use them to take into consideration when rendering judgment on this action. Now, at sentencing, it may have been appropriate for these letters to come in, but not when determining the guilt or innocence of our client in this matter. Furthermore, in regards to the question of thumps, bumps, noises, that's all really besides the point. The issue is the judge received up to a dozen pages of extremely heart-tearing letters from family members who were devastated by what happened to their sister, by what happened to their family. The thumps quote is only a reflection, is only a piece of evidence that the judge was exposed to this information as an ex parte communication and nothing else at this point in the proceeding. When he made his ruling that Mr. Perry was driving too fast or failed to reduce speed to avoid an accident on that date. When did you trial counsel? I was not, Your Honor. Do you know when counsel was made aware of these? Counsel was made aware of these, Judge Chapman, when we received the record on appeal and we started going through trial records. There was no awareness and it was not placed in evidence. No, Your Honor, and it goes back to our response to the state's first point that somehow this issue is mooted out because we failed to address it at trial or in subsequent post-trial motions. We obviously didn't have the opportunity to do that. This information did not come to us until after trial, until after the period for post-trial motions had occurred. This is a unique situation where a bit of evidence is received after the customary period. But it is virtually inconceivable that His Honor would have put that word, placed it in quotation marks at the beginning of his order, if not drawing it from those letters, those ex parte communications. We cite in our brief the Wheatley case. It's a family law case. This is, you know, obviously not apples to apples in terms of facts of the case. But following the same logic of that court, Your Honor, the judge received a letter from a family member attempting to sway him and inform of his make as he made his decision in the case and the appellate court subsequently in the Fourth Circuit struck that decision down because that was an ex parte communication. This is not a victim impact statement. This is the state attempting to clothe an ex parte communication in the trappings of the victim impact statement. That may be what they would have become at some point, but definitely not in this stage of the proceedings, Your Honor. And just so I understand, this victim impact statement, you believe, swayed the court as opposed to anything else? I would point out the fact that in the decision that he rendered, Your Honor,  Just briefly. Thank you, Your Honor. Answer. In his order, as he addressed the very first items of importance in his thought process, the very first paragraph on the facts, the judge stated as a fact of the case that the defendant was turning his vehicle right, he began to turn his head back to the right when he heard two quotation mark thumps. Okay. I understand that from your brief. Okay. Thank you. Thank you, Your Honor. And in answer, yes, we believe that it swayed his decision making. All right. Thank you, counsel, both for your arguments, and for the case manner and advisement for your decision. Of course.